## HOFFMAN *v.* SIMPSON.

MARRIAGE—LEGITIMACY OF CHILD—EVIDENCE.

The marriage of parties and the legitimacy and sole heirship of a child are *prima facie* established, so as to render a deed from the child admissible in evidence, by the testimony of witnesses that they knew the parties for many years, that they lived together, and held themselves out as husband and wife, and were so regarded in the community, that such child grew up in the family of the parties, and was always recognized as their daughter, and that the parties had no other children to the knowledge of the witnesses.

Error to Crawford; Sharpe, J. Submitted June 12, 1896. Decided July 8, 1896.

Replevin by John M. Hoffman against William H. Simpson and others. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Reversed.

*Phillips & Jenks*, for appellant, cited *Proctor* v. *Bigelow*, 38 Mich. 282; *Fulkerson* v. *Holmes*, 117 U. S. 389; *Jackson* v. *King*, 5 Cow. 237 (15 Am. Dec. 468); *Eaton* v. *Tallmadge*, 24 Wis. 217; *Jackson* v. *Cooley*, 8 Johns. 128; *Denoyer* v. *Ryan*, 24 Fed. 77; *McClaskey* v. *Barr*, 47 Fed. 168; *Elliott* v. *Peirsol*, 1 Pet. 328; *Mason* v. *Fuller*, 45 Vt. 29; *Backdahl* v. *Lodge*, 46 Minn. 61.

*M. J. Connine*, for appellees.

HOOKER, J. The plaintiff appeals from an adverse directed verdict in replevin of logs, depending on plaintiff's title to land from which they were cut. His documentary evidence of title consisted of a certified copy of the patent of the State of Michigan to William Sanborn

of the premises, dated in 1873, and a quitclaim deed dated in January, 1892, from Kate Sanborn Jenks to the plaintiff and Frank Hoffman, and a quitclaim deed dated in April, 1892, from Frank Hoffman to the plaintiff. The admission of these deeds being objected to, plaintiff's counsel introduced testimony which he claimed tended to prove that William Sanborn and Nancy Howard were married and lived in Port Huron, and that Kate Sanborn was their daughter and sole heir at law, and that William Sanborn died intestate. The court, however, thought this testimony insufficient to sustain the claim that Kate Sanborn had title, and refused to admit the deed from her in evidence. The case, therefore, is resolved into the question whether there was *prima facie* evidence that Kate was the legitimate daughter of William Sanborn.

The evidence may be summarized as follows: The plaintiff testified that he knew William Sanborn and Nancy Howard before their alleged marriage; that both resided in Port Huron, where he lived; and that after a time, and before the war, it was reported that they had married. They had lived together at Port Huron, and they had passed and been known as husband and wife since. William L. Jenks testified that he knew William and Nancy Sanborn for 28 or 30 years, and that they lived together in Port Huron, and held themselves out as husband and wife, and were so regarded in the community; that he knew the daughter, Kate, 26 or 28 years, which was about her age; and that she was always called "daughter" by William and Nancy Sanborn. Kate was the wife of the witness' brother. On cross-examination, the witness emphasized the foregoing by saying that Kate grew up in the family, and that the parties had no other children to his knowledge, and he would have known it if they had.

The court thereupon struck out the deed, on the grounds: (1) Lack of proof of marriage; (2) that there was no

proof that Kate was the legitimate daughter or heir of William Sanborn, and not an adopted daughter.

Counsel for defendants claims:

"In order to go to the jury, there should have been some legal proof upon these four points, viz.:

"1. The marriage of William Sanborn and Nancy Howard at a time prior to the birth of Kate Sanborn Jenks.

"2. That Kate Sanborn Jenks was their child, and the child of both of them, born in lawful wedlock.

"3. That Kate Sanborn Jenks was their only child.

"4. That Kate Sanborn Jenks solely took the land by will, or that William Sanborn died intestate, and she alone took by descent."

We think the evidence of marriage and the presumption of legitimacy sufficient to make a *prima facie* case, and we are as well satisfied that there is no presumption that the Sanborns had other children, or that Sanborn died testate. See *Proctor* v. *Bigelow*, 38 Mich. 282, and other cases cited in appellant's brief.

The judgment is reversed, and a new trial ordered.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred. GRANT, J., did not sit.